❏ Original      ❏ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Google accounts: lasheddbylolaa@gmail.com,<br>twaquillagray@gmail.com, and<br>christopherfortenberry91@gmail.com | )<br>)<br>)<br>)<br>)<br>)    Case No.23-1818M(NJ)<br>**Matter No.: 2023R00230** |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 10/30/2023 _____ *(not to exceed 14 days)*
xx❏ in the daytime 6:00 a.m. to 10:00 p.m.     ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

❏ for _____ days *(not to exceed 30)*    ❏ until, the facts justifying, the later specific date of _____.

Date and time issued: 10/16/2023 @ 3:13 p.m. _____

                                                        *Judge's signature*

City and state:    Milwaukee, Wisconsin             Hon. Nancy Joseph, U.S. Magistrate Judge
                                                              *Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

       I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the following Google drive account and email address that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

Target Account 1: **lasheddbylolaa@gmail.com**

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Google drive account and email address that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

Target Account 2: **twaquillagray@gmail.com**

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Google drive account and email address that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

Target Account 3: **christopherfortenberry91@gmail.com**

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of January 1, 2023 to the present:

a.      The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail.

b.      The contents of all instant messages associated with the accounts from January 1, 2023 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

30

c. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d. The types of service utilized;

e. All records or other information stored at any time by an individual using the account, including address books, contacts and buddy lists, calendar data, pictures, videos and files;

f. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken;

g. All communications, in whatever form, and other information from Google Hangouts associated with the account;

h. All information and documents from Google Drive associated with the account;

i. All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google;

j. For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

31

The Provider is hereby ordered to disclose the above information to the government within fourteen days of the issuance of this warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Google accounts: lasheddbylolaa@gmail.com,<br>twaquillagray@gmail.com, and<br>christopherfortenberry91@gmail.com | )<br>)<br>)<br>)<br>)<br>) |

Case No. 23-1818M(NJ)

## Matter No.: 2023R00230

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) & 846 | Distribution and Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Michael LOPEZ  *Digitally signed by Michael LOPEZ Date: 2023.10.13 12:25:03 -05'00'*

*Applicant's signature*

TFO Michael Lopez, DEA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means)*.

Date: 10/16/2023

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR SEARCH WARRANTS**

I, Michael Lopez, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for information associated with a Google account that is stored at premises controlled by Google, Inc. ("Google"), an e-mail provider headquartered at 1600 Amphitheatre Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), currently assigned to the High Intensity Drug Trafficking Area (HIDTA) and have been since March 2020.  I am also currently a Milwaukee Police Officer and have been since September 2000. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws, including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related

1

offenses. I have had both formal training and have participated in numerous complex drug-trafficking investigations, including ones using wiretaps.

3.      As part of my duties as a DEA TFO, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 21, United States Code, Sections 841, 843, 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c).  In the course of my experience, I have been and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, forgeries, including cellular telephones and other electronic telecommunication devices.

4.      This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

5.      I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

6.      Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this

investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

7.      Based on the facts set forth in this affidavit, there is probable cause to believe that Christopher D. FORTENBERRY (DOB: 03/27/1990) has violated Title 21, United States Code, Section 841(a)(1) (distribution of a controlled substance), and Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance). There is also probable cause to search the information described in Attachment A for evidence and instrumentalities of these crimes further described in Attachment B.

## JURISDICTION

8.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

9.      Case agents are currently investigating Christopher D. FORTENBERRY (DOB: 03/17/90), who is selling cocaine, and fentanyl in the Eastern District of Wisconsin.

10.     In June 2023, case agents initiated an investigation into Tarsh A. SMITH (DOB: 03-27-90), who was identified by a confidential source as a person who was distributing large amounts of heroin in Milwaukee, Wisconsin.

3

11.     During the preliminary investigation, case agents conducted a check that showed SMITH was on extended supervision with the Wisconsin Department of Corrections for Possess w/Intent-Cocaine (>5-15g), and 2nd-Degree Recklessly Endangering Safety under Milwaukee County case no. 15CF631.

12.     Further investigation showed that on February 1, 2021, SMITH was charged with Possess w/Intent-Heroin (>10-50g) and Possess w/Intent-Cocaine (>1-5g) under Milwaukee County case no. 21CF380.  According to Wisconsin's Consolidated Court Automation Programs (CCAP), the date of the offenses was January 28, 2021.  Case agents reviewed Milwaukee Police Department reports regarding the case and learned that the analysis of a cellphone linked to SMITH contained communications consistent with drug trafficking, including the sale of heroin.

13.     Case agents searched CLEAR for any records for SMITH. CLEAR is a database containing public records available to law enforcement. Case agents have used this database in the past and found it to be reliable and accurate.  A search of CLEAR showed SMITH's last known address was 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI.

14.     On June 2, 2023, case agents served Community Manager Stacy Becker of Mandel Group, a property management company for 10430 West Innovation Drive, Wauwatosa, WI, an administrative subpoena for information related to Apartment 112. Becker confirmed SMITH is the lone tenant of 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI and signed a lease agreement for the property on December 9, 2022. Becker further provided case agents with a copy of SMITH's Wisconsin driver's license,

4

which SMITH provided during the rental application process. Becker further informed case agents that SMITH was assigned parking stall "108" in the underground parking garage.

15.     On June 6, 2023, the Honorable Michael J. Hanrahan, Circuit Court Judge for Branch 4 in Milwaukee County, authorized a warrant allowing a certified drug detection canine and its handler to enter onto the curtilage of 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI to conduct a dog sniff.

16.     On June 9, 2023, pursuant to a positive alert by the drug detection canine, the Honorable Jean M. Kies, Circuit Court Judge for Branch 45 in Milwaukee County, authorized a warrant to search the premises at 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI.

17.     On June 13, 2023, case agents executed the warrant to search 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI (hereinafter, "the premises"). During the execution of the search warrant, SMITH along with Desiree D. Washington (DOB: 06-11-90) and a juvenile with the initials D.W were located inside the premises.

18.     During a search of the premises, case agents found a black and gray Nike brand shoe box, size 13, inside the left cabinet of the bathroom vanity. The shoe box contained a black canvas bag that held a tan in color Gucci brand bag. The Gucci bag contained a gray chunk of suspected fentanyl inside a sandwich baggie. The suspected fentanyl was in the shape of a square and appeared to be manufactured in a press. Also inside the shoe box was a second sandwich baggie that contained a tan chunk of suspected fentanyl. The shoebox had a third sandwich baggie that contained an off-white

5

chunk of suspected crack cocaine as well. The suspected controlled substances were later transported to North Central HIDTA where case agents subjected the substances to Nark II field tests no. 2 and no. 33. The suspected fentanyl tested positive for the presence of fentanyl with total weights of 120 grams and 80 grams. The suspected crack cocaine tested positive for the presence of cocaine with a total weight of 40 grams. Case agents inventoried the controlled substances on Milwaukee Police inventory no. 23019110.

19.     In a bathroom vanity on the premises, case agents found a black Adidas brand bag that contained a gray in color Magic Bullet brand blender with gray residue inside the blender. The blender was later transported to North Central HIDTA. Case agents subjected a sample of the residue from inside the blender to a Nark II Field test no. 33. The substance tested positive for the presence of fentanyl. Case agents inventoried the Magic Bullet on Milwaukee Police inventory no. 23019092 as item no. 7.

20.     Case agents found brown paper bags in the center drawer of the bathroom vanity on the premises. The paper bags contained numerous sandwich baggies with the corners missing. Case agents inventoried the baggies on Milwaukee Police inventory no. 23019114 as item no. 5.

21.     Case agents found a white plate in the center drawer of the bathroom vanity on the premises. The white plate contained a tan residue. The plate was later transported to North Central HIDTA. Case agents subjected a sample of the residue to a Nark II field test no. 33. The substance tested positive for the presence of fentanyl. Case agents inventoried the plate on Milwaukee Police inventory no. 23019092 as item no. 9.

6

22.     Case agents found a black digital gram scale in the center drawer of the bathroom vanity on the premises. The scale was later transported to North Central HIDTA. Case agents inventoried the scale on Milwaukee Police inventory no. 23019092 as item no. 5.

23.     Case agents found a black Glock 43X 9mm handgun with serial no. BXCD414. The firearm contained one unspent 9mm cartridge in the chamber and 14 unspent 9mm cartridges in the magazine. Case agents located the Glock in the front pocket of a gray 3XL Nike brand hooded sweatshirt. The sweatshirt was located on the right side of the bed along the headboard in the master bedroom of the premises. The Glock was located with a gold in color necklace with a crown pendant with the word "Huncho" attached to the pendant. The Glock was later transported to North Central HIDTA. Case agents inventoried the item on Milwaukee Police inventory no. 23019100. Case agents later transported the Glock to the Milwaukee Police Department's Forensic Unit for a forensic analysis.

24.     Case agents found U.S. currency inside the right front pants pocket of a pair of blue jeans that were recovered from the ground, next to the bed, near the window of the master bedroom of the premises. The blue jeans containing the US currency were size 44. On June 21, 2023, case agents transported the currency to Loomis for an official count. The currency was determined to be $7,280.00.

25.     Case agents found an ETS brand 9mm extended magazine in the premises' master bedroom closet. The magazine contained 15 unspent 9mm cartridges. The

magazine was later transported to North Central HIDTA. Case agents inventoried the item on Milwaukee Police inventory no. 23019114.

26. Case agents found a black iPhone with no case and a black Sonim flip style cellular phone on top of a shoe box along the southside wall of the premises' master bedroom. The cellular phones were later transported to North Central HIDTA. Case agents inventoried the items on Milwaukee Police Department inventory no. 23019198 as item no. 1 and item no. 2.

27. Case agents as witnessed by West Allis P.D. Corporal Eric French found a black iPhone with no case and shattered back, and a black iPhone with clear case. The cellular phones were located on the left side of the bed in the premises' master bedroom. The cellular phones were later transported to North Central HIDTA. Case agents inventoried the items on Milwaukee Police Department inventory no. 23019198 as item no. 3 and item no. 4.

28. Case agents found a red iPhone with a Supreme brand case, and a blue iPhone with a clear case and black magnet holder. The cellular phones were located on the right side of the bed in the premises' master bedroom. The cellular phones were later transported to North Central HIDTA. Case agents inventoried the items on Milwaukee Police Department inventory no. 23019198 as item no. 5 and item no. 6.

29. Case agents found a black iPhone with a black case. The cellular phone was on top of the bed in the premises' south bedroom. The cellular phone was later transported to North Central HIDTA. Case agents inventoried the cellular phone on inventory no. 23019198 as item no. 7.

8

30.     Case agents found a blue plate in the bottom right drawer of the kitchen island in the premises. The plate contained an off-white residue. The plate was later transported to North Central HIDTA. Case agents subjected a sample of the residue to a Nark II field test no. 07. The substance tested positive for the presence of cocaine. Case agents inventoried the plate on Milwaukee Police inventory no. 23019092 as item no. 8.

31.     Case agents found a Pyrex glass in the cabinet under the sink in the premises. The Pyrex contained an off-white residue. The Pyrex was later transported to North Central HIDTA. Case agents subjected a sample of the residue to a Nark II field test no. 07. The substance tested positive for the presence of cocaine. Case agents inventoried the Pyrex on Milwaukee Police inventory no. 23019092 as item no. 4.

32.     Case agents found a black digital gram scale in the second drawer from top of the kitchen island in the premises. The scale was later transported to North Central HIDTA. Case agents inventoried the scale on Milwaukee Police inventory no. 23019092 as item no. 6.

33.     Case agents located vehicle keys in the apartment. The keys belonged to a black Chevy Equinox bearing Florida registration 45ASKZ (Vin no. 2GNAXHEVXL6278765) that was parked in the underground garage (stall 108). The vehicle is a rental vehicle with PV Holdings. Nothing of evidentiary value was found in the vehicle.

34.     On June 14, 2023, the Honorable Barry Phillips, Court Commissioner for the First Judicial District of Wisconsin, authorized a search warrant to conduct a forensic

analysis of the above-referenced cellular phones that were seized during the execution of the search warrant at 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI.

35.     Case agents viewed a forensic analysis of the blue iPhone with a clear case with black magnet holder that was seized from the master bedroom and later placed on Milwaukee Police inventory no. 23019198 item no. 6. The cellular phone was identified as an iPhone 12 with phone number 414-610-5413 and Apple ID hunchotez38@icloud.com.

36.     While viewing text messages sent from this device, case agents observed a conversation between SMITH, who is believed to be the user of the blue iPhone assigned number 414-610-5413 (recovered from the master bedroom of SMITH's residence on June 13, 2023), and "Playboy," who was using cellular phone number 414-803-1633.

Depicted below is a conversation between who agents believe was SMITH and "Playboy," which was obtained through a forensic analysis of the blue iPhone.





**Playboy**
Here
12/31/2022 4:13:43 PM(UTC-6)
Sources (1)

_$!<Other>!$_
Me too.. Jeep
12/31/2022 4:14:08 PM(UTC-6)
Sources (1)

_$!<Other>!$_
I can't even hit this shit Playboy ..
12/31/2022 5:41:39 PM(UTC-6)



_$!<Other>!$_
Jail call
12/31/2022 5:42:26 PM(UTC-6)
Sources (1)

_$!<Other>!$_
My head just called back and said he don't feel it.. I told him wait a lil bit longer to let it kick in
12/31/2022 5:43:39 PM(UTC-6)
Sources (1)

**Playboy**
12/31/2022 5:44:03 PM(UTC-6)



_$!<Other>!$_
Playboy they saying this shit touched up my baby
12/31/2022 5:59:07 PM(UTC-6)
Sources (1)

_$!<Other>!$_
Meet me real quick I need to grab something, I don't got shit and my people calling
12/31/2022 6:24:36 PM(UTC-6)
Sources (1)

**Playboy**
Wya
12/31/2022 6:25:05 PM(UTC-6)

11



37.     Given the context of the conversation, case agents believe SMITH is purchasing drugs from "Playboy".  Case agents also believe SMITH is informing "Playboy" he will not be able to cut the drugs. Case agents know through training and experience that cutting is a common process drug dealers use to maximize their profits. Drug dealers will mix a substance that is similar in texture and color with illicit drugs such as heroin, cocaine, or fentanyl to increase quantity. This process will also change the texture and color of the illicit drug and alter the effect of the drug.  If an illicit drug has been cut too much, a drug dealer will be unable to maximize profit and the illicit drug can become too diluted.

38.     On July 14, 2023, case agents debriefed a confidential source, hereinafter referred to as CS-1. CS-1 informed case agents that "Playboy", an associate and source of supply for SMITH, was selling kilograms of cocaine and/or fentanyl. CS-1 further identified Playboy as a "shooter".  Case agents know "shooter" is street terminology used to describe an individual who is known to use firearms in response to one's enemies. CS-1 stated "Playboy" uses Facebook profile "Chris Corleone" and showed case agents a

Facebook photograph of "Playboy". Furthermore, on June 24, 2022, "Playboy" posted a photograph depicting himself and a child with a caption that identified himself as "Uncle Playboy".

39.     On July 17, 2023, case agents searched a law enforcement database and developed an investigate lead. Case agents were able to compare a booking photograph collected from the law enforcement database of Christopher D. FORTENBERRY, (DOB: 03-17-90), with the Facebook photograph of "Playboy". FORTENBERRY is the same person depicted in the Facebook photograph of "Playboy".

40.     On August 1, 2023, CS-1 informed case agents that FORTENBERRY contacted someone nicknamed "Nuke" about purchasing cocaine and/or fentanyl. CS-1 further stated "Playboy" informed "Nuke" that he had a shipment coming in soon. CS-1 stated "Playboy" was using cellular phone number 414-808-5081. Case agents know it is common for drug dealers to use more than one phone number. Case agents believe CS-1 is credible because CS-1 has provided law enforcement information in the past that has led to search warrants and the seizure of contraband and weapons. Additionally, the information CS-1 provided has been corroborated through independent investigation. That affiant is aware that CS-1 mentioned in this affidavit has a criminal history, including a non-felony criminal conviction, and is providing information to law enforcement for monetary gain.

41.     On August 3, 2023, your Affiant served T-Mobile an administrative subpoena for subscriber information related to phone number 414-808-5081. T-Mobile's

records show the subscriber for the cellular phone number is Twaquilla Gray of 6421 North 106th Street, Milwaukee, WI.

42.     A check of Wisconsin Circuit Court Access showed FORTENBERRY was issued a citation under Milwaukee County case no. 23TR011201 while operating a 2019 Volkswagen Atlas bearing Wisconsin registration ALD-6981.  Wisconsin Department of Transportation records show the Volkswagen is registered to Twaquilla M. Gray, DOB: 11-07-82, of 6421 North 106th Street, Milwaukee, WI.

43.     On August 17, 2023, case agents served United Airlines an administrative subpoena for all flight records for FORTENBERRY from January 1, 2023, to August 16, 2023.  On August 31, 2023, United Airlines provided case agents with flight records for FORTENBERRY.

44.     United Airlines records show on January 31, 2023, FORTENBERRY is listed as a passenger on United Airlines flight no. 1049 that departed O'Hare International Airport in Chicago, Illinois and landed at San Francisco International Airport, in San Francisco, California. The records also show on February 3, 2023, FORTENBERRY is listed as a passenger on United Airlines flight no. 476 that departed San Francisco International Airport and landed at O'Hare International Airport. United Airlines records show email **lasheddbylolaa@gmail.com (TARGET ACCOUNT 1)** was provided for the ticket purchase transaction.

45.     United Airlines records show on March 22, 2023, FORTENBERRY is listed as a passenger on United Airlines flight no. 1836 that departed O'Hare International Airport and landed at San Francisco International Airport. United Airlines records show

14

email **twaquillagray@gmail.com (TARGET ACCOUNT 2)** was provided for the ticket purchase transaction.

46.     United Airlines records show on April 15, 2023, FORTENBERRY is listed as a passenger on United Airlines flight no. 1999 that departed O'Hare International Airport and landed at San Francisco International Airport. United Airlines records show email **christopherfortenberry91@gmail.com (TARGET ACCOUNT 3)** was provided for the ticket purchase transaction.

47.     United Airlines records show on May 9, 2023, FORTENBERRY is listed as a passenger on United Airlines flight no. 476 that departed San Franscico International Airport and landed at O'Hare International Airport.  United Airlines records show email **twaquillagray@gmail.com (TARGET ACCOUNT 2)** was provided for the ticket purchase transaction.

48.     United Airlines records show on July 7, 2023, FORTENBERRY is listed as a passenger on United Airlines flight no. 343 that departed O'Hare International Airport and landed at San Franscico International Airport.  The records also show on July 10, 2023, FORTENBERRY is a passenger on United Airlines flight no. 2423 that departed San Francisco International Airport and landed at O'Hare International Airport. United Airlines records show email **twaquillagray@gmail.com (TARGET ACCOUNT 2)** was provided for the ticket purchase transaction.

49.     United Airlines records show on July 26, 2023, FORTENBERRY is listed as a passenger on United Airlines flight no. 2051 that departed O'Hare International Airport and landed at San Francisco International Airport. United Airlines records show email

**twaquillagray@gmail.com (TARGET ACCOUNT 2)** was provided for the ticket purchase transaction.

50.     United Airlines records show on August 17, 2023, FORTENBERRY and Twaquilla Gray are both listed as passengers on United Airlines flight no. 2385 that departed O'Hare International Airport and landed at George Bush International Airport in Houston, Texas. United Airlines records show on August 18, 2023, FORTENBERRY and Gray are both listed as passengers on United Airlines flight no. 6035 that departed George Bush International Airport and landed at Milwaukee Mitchell International Airport. United Airlines records show email **twaquillagray@gmail.com (TARGET ACCOUNT 2)** was provided for the ticket purchase transaction.

51.     United Airlines records show on August 21, 2023, FORTENBERRY and Twaquilla Gray are both listed as passengers on United Airlines flight no. 1849 that departed Milwaukee Mitchell International Airport and landed at George Bush International Airport. United Airlines records show on the same day, FORTENBERRY and Gray were passengers on United Airlines flight no. 1409 that departed Geroge Bush International Airport and landed at Milwaukee International Airport. United Airlines records show email **twaquillagray@gmail.com (TARGET ACCOUNT 2)** was provided for the ticket purchase transaction.

52.     On September 6, 2023, U.S. Magistrate Judge Stephen C. Dries, Eastern District of Wisconsin, authorized the collection of GPS/E-911 Phase II data (location information) (23-M-430) for FORTENBERRY's cellular phone assigned number 414-808-5081.

53.     While monitoring the location data from FORTENBERRY's cellular phone, case agents observed that on September 9, 2023, at approximately 7:58 a.m., FORTENBERRY traveled to O'Hare International Airport. On the same date at approximately 1:28 p.m., FORTENBERRY arrived at the San Francisco International Airport in San Francisco, California. Location data showed FORTENBERRY subsequently left the San Francisco area.  On September 10, 2023, at approximately 3:28 a.m., FORTENBERRY traveled back to the San Francisco International Airport. On the same date at approximately 11:48 a.m., FORTENBERRY arrived at O'Hare International Airport.

54.     On September 28, 2023, at approximately 4:10 a.m., FORTENBERRY traveled to O'Hare International Airport. On the same date at approximately 10:00 a.m., FORTENBERRY arrived at the San Francisco International Airport. Trap and trace devices show FORTENBERRY stays relatively close to the San Francisco International Airport. On the same date, at approximately 7:30 p.m., FORTENBERRY arrived at O'Hare International Airport.

55.     On September 29, 2023, at approximately 11:15 a.m., FORTENBERRY traveled to O'Hare International Airport. On the same date at approximately 4:28 p.m., FORTENBERRY arrived at McCarran International Airport in Las Vegas, Nevada. On October 3, 2023, FORTENBERRY arrived at Milwaukee Mitchell International Airport. I am aware that in January 2022, DEA TFO Troy Maas conducted a debrief of a confidential source (CS-2) who informed TFO Maas that FORTENBERRY was a multi-ounce to kilogram quantity cocaine dealer who believed FORTENBERRY had a source of

17

supply in San Francisco, California. For several reasons, case agents believe CS-2's information is reliable and credible. Substantial parts of CS-2's information have been independently corroborated and verified by law enforcement. CS-2 has made direct observations, which were further corroborated and verified by law enforcement. CS-2's information has been consistent with information obtained from travel records, utility records, telephone toll records, social media records, public databases, and surveillance. CS-2 has also provided information on violent crimes unrelated to this investigation, leading to the arrests of multiple suspects. CS-2 has prior convictions for theft, possession of controlled substances, possession of a firearm by a felon, manufacture or deliver controlled substances, and parole violations. CS-2 is cooperating with the government in exchange for financial compensation.

56. Pen registers show FORTENBERRY is in contact with a phone number that has a California area code. Case agents believe that FORTENBERRY's quick trips to and from northern California (i.e., the San Francisco Bay area) are indicative of drug trafficking.

**BACKGROUND CONCERNING GOOGLE**

57. Google provides a variety of services that can be accessed from Google devices, Android devices or, in some cases, other devices via web browsers or mobile and desktop applications ("apps"). As described in further detail below, the services include email, messaging, and file storage:

18

a.     Google provides email services to its users through email addresses at the domain gmail.com.

b.     **Google Drive** - is a file storage and synchronization service developed by Google. Google Drive allows users to store files in the cloud (on Google's servers), synchronize files across devices, and share files. In addition to a web interface, Google Drive offers apps with offline capabilities for Windows and macOS computers, and Android and iOS smartphones and tablets. Google Drive encompasses Google Docs, Google Sheets, and Google Slides, which are a part of the Google Docs Editors office suite that permits collaborative editing of documents, spreadsheets, presentations, drawings, forms, and more. Files created and edited through the Google Docs suite are saved in Google Drive. Google Drive offers users 15 GB of free storage, sharing it with Gmail and Google Photos. Google Drive also offers 100 GB, 200 GB, and 2 TB through optional Google One paid plans. Files uploaded can be up to 750 GB in size. Users can change privacy settings for individual files and folders, including enabling sharing with other users or making content public.

c.     **Gmail -** The Gmail account may be used to send and receive electronic mail messages and chat histories. These messages include incoming mail, sent mail, and draft messages. Messages deleted from Gmail are not actually deleted. They are moved to a folder labelled Trash and are stored there until the user empties the Trash file. Additionally, users can send and receive files as attachments. These files may include documents, videos, and other media files.

19

d. **Messages -** Messages (formerly known as Android Messages) is an SMS, RCS, and instant messaging application developed by Google for its Android and Wear OS mobile operating systems, while it's also available via the Web. Messages is Google's official universal messaging platform for the Android ecosystem.

e. **Calendar -** Google offers a calendar feature that allows users to schedule events. This calendar function is the default option in the Android operating system and remains so unless the user adds a third-party application. Calendar events may include dates, times, notes and descriptions, others invited to the event, and invitations to events from others. Affiant believes this information will identify dates and appointments relevant to this investigation, as well as identify previously unknown co-conspirators and/or witnesses, and any potential corroborative evidence.

f. **Contacts -** When a user links the Android device to their Google account the names, addresses, phone numbers, email addresses, notes, and pictures associated with the account are transferred to the phone and vice versa. This process is continuously updating so when a contact is added, deleted, or modified using either the Google account or the mobile device the other is simultaneously updated.

g. **Google Photos -** Google users have the option to store, upload, and share digital images, graphic files, video files, and other media files. These images may be downloaded from the internet, sent from other users, or uploaded from

20

the user's mobile device. In many cases, an Android user may configure their device to automatically upload pictures taken with a mobile device to their Google account.

h. **Location History -** Google collects and retains location data from Android enabled mobile devices. The company uses this information for location-based advertising and location-based search results. Per Google, this information is derived from Global Position System (GPS) data, cell site/cell tower information, and Wi-Fi access points. While the specific parameters of when this data is collected are not entirely clear, it appears that Google collects this data whenever one of their services is activated and/or whenever there is an event on the mobile device such as a phone call, text messages, internet access, or email access.

i. **Play Store -** Google operates an online marketplace whereby Google and other third-party vendors offer for sale applications such as games, productivity tools, and social media portals. Many of these applications can be used to communicate outside the cellular service of a mobile device by accessing the internet via Wi-Fi. These various applications facilitate communication via voice using voice over internet protocol (VOIP) technology, short message system (SMS) text messages, multi-media message system (MMS) text messages, audio transmission of recorded messages, and recorded or live video messages. As these services operate independently of the cellular service network there is no corresponding information regarding communications from the cellular provider.

21

j. **Voice** - Google offers users access to a free voice over internet protocol (VOIP) communications system called Google Voice or simply Voice. This system is layered on top of any existing cellular service. Users are provided with a phone number they select from a pool of available numbers. These numbers can be from whatever area code and prefix they desire and have no correlation with the user's actual location when the number is selected. Google allows users to access this system to make and receive phone calls and text messages. The service also has a voicemail feature where incoming phone calls are permitted to leave a message that is subsequently transcribed by Google and delivered by electronic mail and/or text message. Google maintains call detail records similar to those of a traditional cellular or wireline telephone company. Additionally, they also store the text message content of sent and received text messages, as well as any saved voicemail messages and the associated transcriptions.

k. **Wallet/Checkout -** Google operates a financial services division that allows users to make online purchases through Google and other vendors, as well as send and receive money from other users. Applications that are purchased and installed on a mobile device are handled by Google's Wallet/Checkout service. The purchase and installation of applications on a mobile device requires the use of the Google Wallet service.

58. Users of Android operating system mobile devices commonly have an associated account with Google, Inc.; When a user purchases and activates a mobile device one of the initial prompts during the set-up phase is to associate a Google Gmail

22

account with the device; that the purposes of this account are to facilitate a password reset in the event the consumer forgets their passcode, pattern unlock, or password; that if the consumer does not have an existing Gmail account, the operating system prompts the user to create a new account;.

59.     Google maintains information about their customers including primary email addresses, secondary email addresses for account password recovery, applications, websites, and services that are allowed to access the user's Google account or use the user's Google account as a password login, and account login activity such as the geographic area the user logged into the account, what type of internet browser and device they were using, and the internet protocol (IP) address they logged in from. The IP address is roughly analogous to a telephone number assigned to a computer by an internet service provider. The IP can be resolved back to a physical address such as a residence or business with Wi-Fi access or residential cable internet.

60.     Google stores information about mobile devices associated with the user's Google account. This includes the make, model, and unique serial numbers of all linked devices.

61.     Affiant knows that Google may not verify the true identity of an account creator, account user or any other person who accesses a user's account using login credentials. For these reasons it is necessary to examine particularly unique identifying information that can be used to attribute the account data to a certain user. This is often accomplished by analyzing associated account data, usage, and activity through communication, connected devices, locations, associates, and other accounts. For these

23

reasons it may be necessary to search and analyze data from when the Google account was initially created to the most current activity.

62. In my training and experience, evidence of who was using a Gmail and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

63. For example, the stored communications and files connected to a Gmail may provide direct evidence of the offenses under investigation. Based on my training and experience, instant messages, emails, voicemails, photos, videos, and documents are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.

64. In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device

24

identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

65. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

66. Other information connected to Gmail may lead to the discovery of additional evidence. For example, the identification of apps downloaded from Play Store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

67. Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google Service. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

68. This application seeks warrants to search all responsive records and information under the control of Google, a provider subject to the jurisdiction of this

court, regardless of where Google has chosen to store such information. The government intends to require the disclosure pursuan.t to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Google's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

## CONCLUSION

69.     Based on my training and experience, and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 841(a)(1) (distribution of a controlled substance), and Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance) have been committed by the users of **TARGET ACCOUNT 1, TARGET ACCOUNT 2,** and **TARGET ACCOUNT 3.** There is also probable cause to search the location described in Attachment A for fruits, evidence and instrumentalities of these crimes further described in Attachment B.

26

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Google drive account and email address that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

Target Account 1: **lasheddbylolaa@gmail.com**

27

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the following Google drive account and email address that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

Target Account 2: **twaquillagray@gmail.com**

## ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the following Google drive account and email address that is stored at premises controlled by Google, a company that accepts service of legal process at 1600 Amphitheatre Parkway in Mountain View, California.

Target Account 3: **christopherfortenberry91@gmail.com**

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A, for the time period of January 1, 2023 to the present:

a.      The contents of all e-mails associated with the account, including stored or preserved copies of e-mails sent to and from the account, draft e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail.

b.      The contents of all instant messages associated with the accounts from January 1, 2023 to the present, including stored or preserved copies of instant messages (including iMessages, SMS messages, and MMS messages) sent to and from the accounts (including all draft and deleted messages), the source and destination account or phone number associated with each instant message, the date and time at which each instant message was sent, the size and length of each instant message, the actual IP addresses of the sender and the recipient of each instant message, and the media, if any, attached to each instant message;

c.      All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

d.      The types of service utilized;

e.      All records or other information stored at any time by an individual using the account, including address books, contacts and buddy lists, calendar data, pictures, videos and files;

f.      All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken;

g.      All communications, in whatever form, and other information from Google Hangouts associated with the account;

h.      All information and documents from Google Drive associated with the account;

i.      All files, keys, or other information necessary to decrypt any data produced in an encrypted form, when available to Google;

j.      For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

31

The Provider is hereby ordered to disclose the above information to the government within fourteen days of the issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of state and federal controlled substances laws Title 21, United States Code, Section 841(a)(1) (distribution of a controlled substance), and Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance)  since January 1, 2023, including, for each account or identifier listed on Attachment A, information pertaining to the following matters: the sale of illegal drugs and the laundering of proceeds of drug sales.

The identity of the person(s) who created or used the Google Account, including records that help reveal the whereabouts of such person(s);

a.     Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber;

b.     Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information);

c.     Evidence indicating the subscriber's state of mind as it relates to the crime under investigation; and

d.     Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.